**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**HATTIESBURG DIVISION**

**WILLIE CLYDE BRELAND**                                             **PLAINTIFF**

**V.**                                             **CIVIL ACTION NO. 2:10-CV-303-KS-MTP**

**FORREST COUNTY SHERIFF'S**
**DEPARTMENT, FORREST COUNTY**
**SHERIFF BILLY BOB MCGEE,**
**in his individual and representative capacity**
**as Sheriff of Forrest County, FORREST**
**COUNTY SHERIFF'S DEPUTY CAPTAIN**
**GLENN MOORE, in his individual and**
**representative capacity as a Deputy and**
**Captain of the Forrest County Sheriff's**
**Department and the FORREST COUNTY**
**BOARD OF SUPERVISORS**                                             **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Defendants' Motion for Summary

Judgment [42] and Motion to Strike Plaintiff's Expert Witness [44].  Having considered

the parties' submissions, the record, and the applicable law, the Court finds that the

Motion for Summary Judgment [42] should be granted and that the Motion to Strike [44]

should be denied as moot.

## I.  BACKGROUND

Plaintiff Willie Clyde Breland alleges violations of certain federal rights and

asserts state law claims in relation to his arrest by a member of the Forrest County

Sheriff's Department at a nightclub on December 16, 2007.  Plaintiff also claims that

Defendants violated the Constitution by seeking to close his nightclub through the

enforcement of Forrest County's Brown Bag Ordinance and other comprehensive,

concerted actions.

Plaintiff is the owner and operator of the Climax Club, a nightclub located in south Forrest County, Mississippi. The Climax Club has been in existence since approximately 1978. On December 6, 2007, the Sheriff of Forrest County, Billy Bob McGee ("Sheriff McGee"), contacted Sheriff's Deputy Captain Glenn Moore ("Captain Moore") concerning numerous complaints pertaining to the Climax Club, including, but not limited to, complaints of gunfire, assaults, serving alcohol beyond legal hours, and unauthorized parking. Captain Moore and several other deputies subsequently investigated the situation, which resulted in David White, an employee of the Climax Club, being arrested during the early morning hours of December 7, 2007, for selling beer after midnight.

On December 16, 2007, Captain Moore returned to the Climax Club (the "Club") due to the Sheriff's Department receiving additional complaints. Captain Moore witnessed several individuals consuming alcoholic beverages after midnight and thus arrested the Plaintiff for violating Forrest County's Brown Bag Ordinance. The Plaintiff was not prosecuted as a result of this arrest because Captain Moore did not file an affidavit against the Plaintiff. Following the arrest, Sheriff McGee spoke with an Alcohol Beverage Control agent who indicated that there may not have been any violation of law. Sheriff McGee then spoke with Captain Moore and advised that unless the Plaintiff gave him any problems during the arrest, they should not pursue charges. Captain Moore indicated that the Plaintiff did not offer any resistance during the arrest.

On December 14, 2010, Plaintiff filed suit in this Court against the Forrest County Sheriff's Department ("Sheriff's Department"); Sheriff McGee, individually and in his official capacity; Captain Moore, individually and in his official capacity; and the Forrest

County Board of Supervisors (the "Board" or "Board of Supervisors").  (*See* Compl. [1].)

Subject matter jurisdiction is asserted under Title 28 U.S.C. §§ 1331 (federal question),

1343 (civil rights and elective franchise), and 1367 (supplemental jurisdiction).  Count

one of the Complaint asserts a cause of action for deprivation of rights pursuant to 42

U.S.C. § 1983.  Plaintiff alleges that his right to be free from excessive force under the

Fourth Amendment, as incorporated by the Fourteenth Amendment, was violated by

Captain Moore during his arrest on December 16, 2007.  The Sheriff, the Sheriff's

Department, and the Board purportedly developed and implemented policies and

procedures that resulted in Plaintiff's injury, and failed to adequately train and supervise

Captain Moore.  Counts two and three of the Complaint assert state law claims of

intentional infliction of emotional distress and assault and battery in relation to Plaintiff's

arrest.  Subsequent filings by the Plaintiff have raised additional constitutional claims,

such as the allegation that Defendants' use of drivers' licence checkpoints near the Club

violated Plaintiff's rights to property and liberty under the Fifth and Fourteenth

Amendments.

On January 23, 2013, Defendants filed their Motion for Summary Judgment [42]

and Motion to Strike Plaintiff's Expert Witness [44].  The motions have been fully briefed

and the Court is ready to rule.

## II.  DISCUSSION

### A.      Standard of Review

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Initially, the movant has "the burden of demonstrating the absence of a genuine issue of material fact." *Cannata v. Catholic Diocese of Austin*, 700 F.3d 169, 172 (5th Cir. 2012) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If the movant meets this burden, the nonmovant must go beyond the pleadings and point out specific facts showing the existence of a genuine issue for trial. *Id.* "'An issue is material if its resolution could affect the outcome of the action.'" *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citing *Sec. & Exch. Comm'n v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)). Summary Judgment is mandatory "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting

*Celotex Corp.*, 477 U.S. at 322), *cert. denied*, 132 S. Ct. 2103 (2012).

**B.    Federal Claims**

Title 42 U.S.C. § 1983 does not provide a general remedy for state law torts or allow access to federal courts for all individuals suffering injuries at the hands of state actors. *White v. Thomas*, 660 F.2d 680, 683 (5th Cir. 1981). The statute "affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Id.* (quoting 42 U.S.C. § 1983). To state a cognizable § 1983 claim, "'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'" *Doe ex rel. Magee v. Covington County Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)). A § 1983 complainant must set forth specific facts showing a constitutional violation, as opposed to conclosury or speculative allegations of wrongdoing. *See, e.g.*, *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739 (5th Cir. 1986).

Official conduct by governmental actors in connection with purported constitutional violations, i.e., the "color of law" requirement,[1] is not disputed in this case. Section 1983 claims may be brought against government employees "in their individual or official capacity, or against a governmental entity." *Goodman v. Harris County*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397,

---

[1] *See Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010).

403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)).  As to individual capacity claims, the

plaintiff must show "that the defendant was either personally involved in the deprivation

or that his wrongful actions were causally connected to the deprivation."  *Jones v.*

*Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) (citation omitted).  "[A]n

official-capacity suit is, in all respects other than name, to be treated as a suit against

the entity.  It is *not* a suit against the official personally, for the real party in interest is

the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 87 L. Ed. 2d 114

(1985) (citation omitted).  A governmental entity cannot be held liable on a *respondeat*

*superior* theory of recovery under § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658,

691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  When the defendant is a local

government, the alleged violation must be connected to an official custom, policy,

practice, ordinance or regulation.  *Jones*, 678 F.3d at 349.  Supervisory officials may be

held liable under § 1983 only if they affirmatively participate in the acts causing the

constitutional violation, or implement unconstitutional policies that result in constitutional

injury.  *Wernecke v. Garcia*, 591 F.3d 386, 401 (5th Cir. 2009) (citing *Gates v. Tex.*

*Dep't of Prot. & Reg. Servs.*, 537 F.3d 404, 435 (5th Cir. 2008)).  Individual defendants,

but not governmental entities, may rely on the defense of qualified immunity.  *Gates*,

537 F.3d at 436.  "Qualified immunity protects public officers from suit if their conduct

does not violate any 'clearly established statutory or constitutional rights of which a

reasonable person would have known.'"  *Prison Legal News v. Livingston*, 683 F.3d

201, 224 (5th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct.

2727, 73 L. Ed. 2d 396 (1982)).

A plaintiff's failure to show a deprivation of his federally protected rights

precludes liability whether the issue is qualified immunity, municipal liability, or supervisory liability. Therefore, the Court will address initially the constitutional claims raised by the Plaintiff that are plainly without merit. First, Plaintiff contends that a "reasonable jury could find that the arrest of David White was unlawful and unconstitutional." (Pl.'s Resp. to Mot. for SJ [46] at p. 4.) "A third party may not assert a civil rights claim based on the civil rights violations of another individual." *Barker v. Halliburton Co.*, 645 F.3d 297, 300 (5th Cir. 2011) (citing *Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986)); *see also Brown v. Bd. of Trustees of LaGrange Indep. Sch. Dist.*, 187 F.2d 20, 25 (5th Cir. 1951) ("plaintiff has wholly failed to plead or prove any deprivation of his civil rights and it is elementary that he has no standing to sue for the deprivation of the civil rights of others").[2] Even assuming that the jury could reasonably conclude that the arrest of Mr. White somehow constituted "a due process violation",[3] that violation would fail to enable the Plaintiff's recovery. Mr. White's "personal right to due process"[4] cannot be asserted vicariously by the Plaintiff. *Cf. Rakas v. Illinois*, 439 U.S. 128, 133-34, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978) ("Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.") (citations omitted).

Second, Plaintiff posits that a "reasonable jury could find that the arrest of

---

[2] The exception for wrongful death claims brought by a decedent's family members has no applicability in this cause. *See Phillips v. Monroe County, Miss.*, 311 F.3d 369, 374 (5th Cir. 2002).

[3] (Pl.'s Resp. to Mot. for SJ [46] at p. 4.)

[4] *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373 (5th Cir. 1987).

Plaintiff without the right to be heard, in a trial, before a neutral magistrate resulted in a due process violation affecting both the Plaintiff's property and his liberty rights." (Pl.'s Resp. to Mot. for SJ [46] at p. 7.) The right to defend oneself against criminal prosecution is guaranteed by the Sixth Amendment, which confers rights that "are part of the 'due process of law' that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States." *Faretta v. California*, 422 U.S. 806, 817-18, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (citations omitted). Further, the right to due process would be surely violated if an individual disputed criminal charges, but was nonetheless convicted without a trial before a neutral fact-finder. However, the Court is unaware of, and the Plaintiff fails to cite any authority finding a violation of due process simply because an individual was arrested but not prosecuted for a crime. Plaintiff's theory essentially would allow for the existence of a constitutional violation anytime a prosecuting office decided not to pursue criminal charges against an arrestee. This Court is unwilling to recognize such an unworkable cause of action.

> **1. Claims Against the Sheriff's Department, the Board of Supervisors, Sheriff McGee (in His Official Capacity), and Captain Moore (in His Official Capacity)**

Neither Plaintiff's Complaint [1] nor his summary judgment Response [46] specifies any alleged wrongdoing solely attributable to the Sheriff's Department. Moreover, the Sheriff's Department is not amenable to suit. A department of a local governmental entity "must enjoy a separate legal existence" in order for it to be properly named as a defendant. *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir.1991) (citations and internal quotation marks omitted). "The capacity of an entity to sue or be sued 'shall be determined by the law of the state in which the district court is

held.'" *Id.* (quoting Fed. R. Civ. P. 17(b) and holding that the Pasadena Police Department was subject to dismissal since it did not enjoy a legal existence separate and apart from the City of Pasadena). "In Mississippi, police and Sheriff's departments are not subject to suit because they do not enjoy a separate legal existence apart from their respective cities or counties." *Fuhgetaboutit, LLC v. Columbus Police Dep't*, No. 1:10cv207, 2011 WL 4529665, at *2 (N.D. Miss. Sept. 28, 2011) (citing *Brown v. Thompson*, 927 So. 2d 733, 737 (¶ 12) (Miss.2006)) (affirming the dismissal of the Bolivar County Sheriff's Department); *see also Stovall v. City of Hattiesburg*, No. 2:10cv84, 2010 WL 1980313, at *1-2 (S.D. Miss. May 17, 2010) (dismissing the Hattiesburg Police Department since the City of Hattiesburg was the proper party). Accordingly, no separate analysis of the Sheriff's Department's potential liability will be undertaken.

"For purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). Plaintiff's claims against Sheriff McGee and Captain Moore in their official capacities are therefore treated as claims against Forrest County. *See Knight v. Millsap*, No. 2:11cv161, 2012 WL 3637627, at *5 (S.D. Miss. Aug. 22, 2012). "Likewise, Plaintiff's claim against the Board of Supervisors is in effect a suit against Forrest County." *Id.* As a result, Plaintiff's § 1983 claims against Sheriff McGee and Captain Moore, in their official capacities, and the Board require proof of the following three elements: "[1] a policymaker; [2] an official policy; and [3] a violation of constitutional rights, whose 'moving force' is the policy or custom." *Doe*, 675 F.3d at 866.

Plaintiff appears to rely on two alleged policies or customs in support of his §

1983 municipal liability claim. The first, Forrest County's Brown Bag Ordinance, is

readily identifiable. The second, "comprehensive and concerted action" on the part of

the Sheriff and his deputies resulting in the closure of Plaintiff's business, is more

amorphous in nature.[5] Each alleged policy or custom will be addressed in turn.

### a. Forrest County's Brown Bag Ordinance

Defendants concede that the Board is a policymaker for Forrest County and that

the Forrest County Brown Bag Ordinance (the "Ordinance") "is an official policy." (Def.'s

Mem. Brief in Supp. of Mot. for SJ [43] at p. 11.) Thus, the salient issue is whether the

Ordinance was the "moving force" behind any alleged constitutional violation. *Doe*, 675

F.3d at 866. Under the "moving force" element, the Plaintiff must show that the

Ordinance itself violates federal law or that the Ordinance "was promulgated with

deliberate indifference to the 'known or obvious consequences' that constitutional

violations would result." *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir.

2001) (quoting *Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382,

137 L. Ed. 2d 626 (1997)). No issue for the jury exists with respect to either potential

showing.

The current version of the Ordinance took effect on December 21, 2006,

approximately one (1) year before the Plaintiff's arrest by Captain Moore. The

Ordinance states in pertinent part:

> "Consume" or "Consumption" shall mean any ingestion of alcoholic
> beverages, beer and light wine or the possession of any alcoholic beverages,

---

[5] (Pl.'s Resp. to Mot. for SJ [46] at p. 6.)

beer and light wine in any type of drinking container or in any bottle, can or other container upon which the seal, cork or cap has been opened.

. . . .

No person, partnership, or corporation, nor any agent or employee thereof, operating a public or private commercial establishment shall permit the consumption of alcoholic beverages, light wine or beer on the premises of such establishment between the hours of 2:00 a.m. and 8:00 a.m., except such consumption on Sunday shall not be permitted after 12:00 a.m.

. . . .

Nothing in the Ordinance shall be construed to authorize, legalize, protect or condone the sale, distribution, possession, storage, consumption or giving away of any alcoholic beverage, beer or light wine which is otherwise prohibited or regulated by laws of the State of Mississippi or Ordinances of Forrest County.

(Ordinance [42-12 at ECF pp. 3, 4].)  Plaintiff alleges that the Ordinance "is patently unconstitutional because of its vagueness and because by definition consumption outlaws the mere possession of light wine and beer".  (Pl.'s Resp. to Mot. for SJ [46] at p. 6.)

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).  "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Gonzales v. Carhart*, 550 U.S. 124, 148-49, 127 S. Ct. 1610, 167 L. Ed. 2d 480 (2007) (citations omitted). Mathematical certainty cannot be expected from statutory language and an ordinarily plain statute will not be rendered void due to speculation about uncertainty or

vagueness in hypothetical situations. *Tex. Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 580 (5th Cir. 2012) (citations omitted). "'[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.'" *Id.* at 581 (quoting *Gonzales*, 550 U.S. at 153).

The Court finds the Ordinance sufficiently clear to pass constitutional muster. A reasonable reading of the Ordinance shows that it prohibits any commercial establishment from allowing the consumption of alcoholic beverages on its premises between 2:00 a.m. and 8:00 a.m. Monday through Saturday, and after 12:00 a.m. on any Sunday. The definition of consumption plainly includes the ingestion of an alcoholic beverage or the possession of an open container. The Plaintiff owner of the Club was arrested by Captain Moore on a Sunday, December 16, 2007, for allowing Club patrons to consume alcoholic beverages after 12:00 a.m. (*See* Breland Dep. [42-1] 63:14-23; Moore Dep. [42-2] 9:8-19, 21:9-12.) Only a strained, convoluted reading of the Ordinance supports the contention that the Plaintiff's arrest resulted by operation of an unconstitutionally vague edict.

Plaintiff's citation to two Mississippi Supreme Court decisions does not change this result. *See Ryals v. Bd. of Supervisors of Pike County*, 48 So. 3d 444 (Miss. 2010); *Maynard v. City of Tupelo*, 691 So. 2d 385 (Miss. 1997). Neither opinion declared an ordinance void for vagueness. In *Maynard*, the court rejected various legal challenges to the City of Tupelo's Brown Bag Ordinance. *See* 691 So. 2d at 386. In *Ryals*, a portion of an ordinance passed by Pike County was found to be preempted by Mississippi State law. *See* 48 So. 3d at 451 (¶ 25). Any potential conflict between Forrest County's Ordinance and any Mississippi statute is an issue for a Mississippi

state court, not this federal court under the auspices of § 1983. *Cf. Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) ("[A] violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights.") (citations omitted).

As to the matter of deliberate indifference, there is no evidence of it in connection with Forrest County's adoption of the Ordinance. Deliberate indifference in the context of municipal liability "is a stringent test, and a showing of simple or even heightened negligence will not suffice . . . ." *Piotrowski*, 237 F.3d at 579. Further, the deliberate indifference test "generally requires that a plaintiff demonstrate at least a pattern of similar violations." *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 309 (5th Cir. 2004) (citations omitted). No showing has been made that Forrest County negligently adopted the Ordinance, much less that Forrest County knew or should have known that constitutional violations would result from its adoption. By all accounts, the Ordinance appears to have been adopted for the legitimate public policy goal of "the protection and promotion of the public health, safety, morality or welfare"[6] of the citizens of Forrest County in recognition of "the danger of unlimited consumption of alcoholic beverages to the public health . . . ." (Ordinance [42-12 at ECF p. 2].) Moreover, Plaintiff's arrest pursuant to the Ordinance hardly results in an impermissible pattern of violations.[7]

---

[6] *Maynard*, 691 So. 2d at 389.

[7] It appears that David White was arrested pursuant to section 67-3-53 of the Mississippi Code, which generally prohibits the sale of beer or light wine between 12:00 a.m. and 7:00 a.m., as opposed to the Ordinance. However, even if Mr. White was arrested pursuant to the Ordinance, two incidents fail to establish a pattern of

**b.      Comprehensive and Concerted Action on the Part of the Sheriff and His Deputies**

Plaintiff alleges "that the continued arrests, harassment in and around the business by Sheriff's deputies, [and] the almost two years of road blocks set up every weekend by the Sheriff and his deputies" constituted "comprehensive and concerted action" resulting in the loss of his property in violation of the Fifth and Fourteenth Amendments.  (Pl.'s Resp. to Mot. for SJ [46] at p. 6.)  Plaintiff relies on *San Jacinto Savings & Loan v. Kacal*, 928 F.2d 697 (5th Cir. 1991), in support of the argument that this concerted action constituted an official policy or custom.  For several reasons, *Kacal* is inapplicable to this dispute and no genuine issue of material fact precludes summary judgment in favor of Defendants on Plaintiff's official capacity claims in connection with this alleged policy.

First, the central issue before the Fifth Circuit in *Kacal* was whether sufficient evidence existed to create a jury issue on Kacal's claim that the City of Waxahachie, Texas (the "City") and a City police officer violated her liberty and property interests in her business by defaming her and harassing her customers.  *See* 928 F.2d at 700.  The court explained that injury to reputation alone does not violate the Due Process Clause and that Kacal was required to show "stigma *plus* an infringement of some other

_____

constitutional violations for deliberate indifference purposes under Fifth Circuit precedent.  *See Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005) (rejecting allegation that two other claims constituted an impermissible pattern in reliance upon *Pineda v. City of Houston*, 291 F.3d 325, 329 (5th Cir. 2002), "finding eleven incidents insufficient to establish a pattern of unconstitutional events").  Although the Fifth Circuit has recognized a "single incident exception" in the context of a failure to train claim, this "exception is extremely narrow" and Plaintiff makes no argument under it in this action.  *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010).

-14-

interest." *Id.* at 701. The stigma portion of the test required proof "that the stigma was caused by a false communication." *Id.* To establish infringement, Kacal had to show that the state sought to remove or significantly alter a liberty or property interest recognized by state law or guaranteed by the Bill of Rights. *See id.* at 701-02. There is no "stigma plus infringement" claim at issue in this case and, even if there were, the summary judgment record fails to evidence any false communications regarding the Plaintiff's Club attributable to any Defendant.

Second, the Fifth Circuit did not find the "comprehensive and concerted action" of the City police "to be sufficient to constitute a policy or custom." (Pl.'s Resp. to Mot. for SJ [46] at p. 6.) Instead, the court declined to decide whether the City had "adopted a custom or policy that deprived Kacal of a protected liberty or property interest" due to the existence of genuine issues of material fact. *Kacal*, 928 F.2d at 704. This Court, unlike the Plaintiff, is unable to apply *Kacal*'s two (2) sentence non-holding on this issue to characterize the Defendants' purported actions as official policy or custom.

Third, even presuming that jury issues exist with respect to the existence of an official policy or custom, the alleged deprivation of Plaintiff's property interest is significantly different from the deprivation at issue in *Kacal*. There, the evidence showed that "the police caused Kacal to lose so much of her [arcade] business that she had to close her doors and default on her lease." *Kacal*, 928 F.2d at 703. Also, "the police officers' continual harassment of Kacal's young and easily intimidated patrons caused the decline in patronage." *Id.* at 703-04.

In this case, the Plaintiff never permanently closed or shut down the Club. Plaintiff testified at deposition on December 12, 2012, that the Club was still open and

that "I still go in there every now and then, but, like I say, you know, I'm not there every day no more." (Breland Dep. [42-1] 15:15-18, 91:8-9.) At best for the Plaintiff, the summary judgment evidence establishes that his business started to slow down sometime in 2007, and that he chose not to open the Club at different times subsequent to 2007. Moreover, the Court presumes that the patrons of the Club, several of whom appear to have submitted affidavits in support of Plaintiff's opposition to summary judgment,[8] were adults capable of making informed and voluntary decisions, as opposed to "impressionable teenagers". *Kacal*, 928 F.2d at 703. Analogous circumstances have led courts to reject deprivation of property or liberty claims based on governmental interference with business operations.[9]

---

[8] (*See* Doc. No. [46-4], including affidavits from David White, the Club employee arrested on December 6, 2007, and the following apparent patrons of the Club: Betty Johnson, April Jackson, Roderick Herrion, and Richard Jasper.) The affidavits are offered to show purported harassment of Club patrons through the use of police checkpoints and/or statements by members of the Sheriff's Department to the effect that they intended to shut down the Club. The affidavits from Betty Johnson, Roderick Herrion, and Richard Jasper are legally inoperative since the Plaintiff did not disclose the identity of these individuals during discovery and no substantial justification for the failure to disclose these witnesses has been offered. *See* Fed. R. Civ. P. 37(c)(1). Even if all the affidavits are considered, the Fifth Circuit has found "eleven incidents insufficient to establish a pattern of unconstitutional events". *Roberts*, 397 F.3d at 295 (citing *Pineda*, 291 F.3d at 329).

[9] *See Sadallah v. City of Utica*, 383 F.3d 34, 38-39 (2d Cir. 2004) (finding that disparaging remarks made by the mayor and city administrators regarding the defendant's restaurant may have caused the defendant to lose some customers, but holding that there was no deprivation of a legally cognizable right or status, such as the revocation of defendant's lease); *Von Stein v. Brescher*, 904 F.2d 572, 583-84 (11th Cir. 1990) (determining that "a temporary, partial loss of income as a result of [a] Sheriff['s] . . . statement" did not significantly alter or extinguish any right guaranteed to the plaintiff); *Wade v. Goodwin*, 843 F.2d 1150, 1152 (8th Cir. 1988) (rejecting claim that the state's inclusion of the plaintiff's name on a "survivalist list" deprived him of his right to liberty and property where the plaintiff's purported injury to his ability to earn a living "could arise only through the acts of private individuals as a result of . . . [alleged]

Fourth, in *Kacal*, the summary judgment evidence indicated that the police officers' harassment of Kacal's customers was "the direct cause of the failure of her business." 928 F.2d at 704. In this case, the slow down in Plaintiff's business could be attributed to any of the following circumstances identified by the Plaintiff during his deposition: 1) Club patrons being ticketed for driving under the influence at police checkpoints near the Club; 2) Plaintiff shortening Club hours due to his belief that the Ordinance prohibited the sale of alcohol after midnight; 3) Plaintiff's absence from the Club due to health reasons; and 4) Plaintiff's neighbor calling the Sheriff's Department and complaining about the Club. (Breland Dep. [42-1] 33:4-10, 86:5-22, 87:5-25, 104:6-11.) The alleged harassment of Club patrons by members of the Sheriff's Department cannot be characterized as the "direct cause"[10] or "moving force"[11] behind any alleged deprivation of property since a reasonable jury could determine that any of the preceding circumstances caused or contributed to Plaintiff's loss of business.

Fifth, there did not appear to be any legitimate reason for the City police preventing Plaintiff's customers from entering her business in *Kacal*. In this case, Captain Moore has testified that drivers' license checkpoints were used countywide and that they served various purposes, such as taking intoxicated people off the road and citing individuals driving without a license. (Moore Dep. [42-2] 44:16-45:10.) Police

---

reputational impairment"); *Goulding v. Feinglass*, 811 F.2d 1099, 1103 (7th Cir. 1987) (holding that the plaintiff was not deprived of a protected property or liberty interest when the government caused him to lose some clients because he retained his license to practice law and continued to represent clients before the I.R.S.).

[10] *Kacal*, 928 F.2d at 704.

[11] *Doe*, 675 F.3d at 866.

checkpoints aimed at the prevention of drunk driving and utilized for the verification of drivers' licenses and registrations are generally considered to be permissible under the Constitution. *See Collins v. Ainsworth*, 382 F.3d 529, 538 (5th Cir. 2004) (citations omitted).[12]

For all the foregoing reasons, summary judgment will be granted in favor of the Defendants on Plaintiff's official capacity/municipal liability § 1983 claims.

### 2.    Claims Against Sheriff McGee in His Individual Capacity

Sheriff McGee has asserted the defense of qualified immunity. This defense protects government officials from both the imposition of damages and trial. *Roberts*, 397 F.3d at 291. "'Although nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.'" *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)). In order to overcome the defense of qualified immunity, the plaintiff must show: "(1) the official violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct." *Khan v. Normand*, 683 F.3d 192, 194 (5th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149

---

[12] There is some evidence to suggest that one of the purposes of the checkpoints at issue in this action was to inhibit individuals from visiting the Club, *see supra* n.8, which, if proven, would be impermissible. *See Collins*, 382 F.3d at 543-44. In *Collins*, the Fifth Circuit held that individuals attempting to attend a concert sufficiently alleged violations of their First and Fourth Amendment rights based on the sheriff's creation of police checkpoints for the purpose of stopping the concert. *See id.* at 544-45. There are no claims from actual or would-be patrons of the Club pending in this action and the time for the assertion of any additional claims has long since passed. (*See* Case Mgmt. Order [14] at p. 4, setting an April 20, 2012, deadline for motions for joinder of parties or amendments to the pleadings).

(2011)), *cert. denied*, 133 S. Ct. 840 (2013). A constitutional right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* Courts have discretion to address the objective reasonableness inquiry first. *See Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). The defense of qualified immunity, "even on summary judgment, gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Poole*, 691 F.3d at 627.

The Court need not consider the second prong of the qualified immunity analysis because the Plaintiff has failed to specify facts showing a genuine issue for trial as to the Sheriff's alleged violation of any constitutional right. A supervisor, such as the Sheriff, may be held liable if he affirmatively participates in acts causing a constitutional violation, or implements an unconstitutional policy that results in a constitutional injury. *Wernecke*, 591 F.3d at 401. A supervisor may also be liable for the failure to train or supervise "if: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation and internal quotation marks omitted). Deliberate indifference in this context "'is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action.'" *Id.* (quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381

(5th Cir. 2005) (citation omitted).

The only constitutional claim not negated by the rulings in the preceding sections of this opinion is Plaintiff's allegation that Captain Moore used excessive force in violation of the Fourth Amendment during his arrest on December 16, 2007. There is no proof that Sheriff McGee affirmatively participated in this alleged violation since he was not present at the Club at the time of the arrest and Plaintiff has admitted that the Sheriff "didn't individually take part in any use of unreasonable force . . . ." (Breland Dep. [42-1] 102:11-13.) Also, no evidence has been presented showing that Captain Moore engaged in a pattern of alleged Fourth Amendment violations such that Sheriff McGee should have known that a risk of substantial harm to the Plaintiff existed on December 16. *Cf. Rutland v. McMillin*, No. 3:08CV763, 2010 WL 3937871, at *6 (S.D. Miss. Sept. 30, 2010) (granting summary judgment in favor of the Sheriff of Hinds County on an inadequate supervision claim where the offending officer committed no prior misdeeds under the Sheriff's supervision); *see also Roberts*, 397 F.3d at 292 ("A plaintiff seeking recovery under a failure to train or supervise rationale must prove that the police chief failed to control an officer's known propensity for the improper use of force.").

A claimant "must allege with specificity how a particular training program is defective" in order to recover on a claim of "inadequate training". *Roberts*, 397 F.3d at 293. Captain Moore and Sheriff McGee's deposition testimony indicates that deputies are trained at the state law enforcement academy on how to make arrests and place handcuffs on suspects. (*See* Moore Dep. [42-2] 6:1-5; McGee Dep. [42-3] 33:1-7.) Plaintiff fails to allege with specificity how this particular training is in any way deficient.

Ultimately, the only theory of recovery against Sheriff McGee implicated by Plaintiff's proof is that of vicarious liability, which is inapplicable under § 1983.  *See Bustos*, 599 F.3d at 468.  Therefore, Sheriff McGee is entitled to summary judgment in this case.

### 3.    Claims Against Captain Moore in His Individual Capacity

In order to succeed on his excessive force claim against Captain Moore, the Plaintiff must show the following:  "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable."  *Hill v. Caroll County, Miss.*, 587 F.3d 230, 234 (5th Cir. 2009) (citing *Williams v. Bramer*, 180 F.3d 699, 704 (5th Cir. 1999)).  As to the issue of reasonableness, "the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)), *cert. denied*, 132 S. Ct. 2433 (2012).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight."  *Id.*  Excessive force claims are necessarily fact-intensive and turn on the specific facts and circumstances underlying each particular case.  *Poole*, 691 F.3d at 628.

Plaintiff's deposition testimony establishes the following facts and circumstances regarding his arrest for summary judgment purposes.  Plaintiff was handcuffed by Captain Moore in the parking lot of the Club shortly after midnight on December 16, 2007.  Plaintiff testifed that "[t]hey just pushed me up against the wall there and they

handcuffed me and throwed me in the back seat." (Breland Dep. [42-1] 59:17-60:4.) Plaintiff did not offer any resistence during the arrest. Plaintiff thought he could have been treated better during the arrest in that Captain Moore "pushed . . . [him] around." (Breland Dep. [42-1] 74:23-75:3.) Captain Moore did not strike the Plaintiff during the arrest. Plaintiff thought that the way Captain Moore placed one of his hands behind his back was unreasonable due to "[t]he way he pulled on it." (Breland Dep. [42-1] 77:25-78:5.) Neither Captain Moore nor any other deputy slammed the Plaintiff into a police car or beat him during the arrest. At the time of the arrest, Plaintiff was approximately two weeks out from being released from his doctor's care in connection with rotator cuff surgery. Plaintiff underwent the surgery in July of 2007. On the way to jail, approximately four or five miles away from the Club, Plaintiff "told him [Captain Moore] I had surgery on it and he didn't pay it no attention." (Breland Dep. [42-1] 73:24-74:11.) Plaintiff was in the back seat of Captain Moore's police car when this statement was made. It took approximately thirty minutes for Captain Moore and the Plaintiff to reach the jail after this statement was made. At no other point in time did the Plaintiff tell Captain Moore anything about his shoulder. Plaintiff thought his shoulder was hurt because he was handcuffed too long. Plaintiff did not receive any other injuries during his arrest or transport to jail.

Viewing the preceding facts and resulting inferences in the Plaintiff's favor, the Court finds that jury issues exist with respect to the first, but not the second and third elements of Plaintiff's excessive force claim. The Fifth Circuit no longer requires "significant injury" with respect to excessive force claims, but "the injury must be more than *de minimis*." *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (citing

*Williams*, 180 F.3d at 703). Further, "handcuffing too tightly, without more, does not amount to excessive force." *Id.* In *Tarver*, the plaintiff's complaint of bruising to his wrists failed to satisfy the injury element of his excessive force claim. *Id.* at 751-52.

In this case, the Plaintiff testified at deposition that he went back to the physician that performed his shoulder surgery after his arrest, and that the physician ordered physical therapy and an MRI. Plaintiff also testified that he went to therapy for two to three months and that it took approximately eight to nine months for his shoulder to feel like it did prior to his arrest. Plaintiff's medical records from the Hattiesburg Clinic (the "Clinic"), which were placed in the record by the Defendants, are largely supportive of this testimony. (*See* Doc. No. [42-14].) The medical records indicate that the Plaintiff visited the Clinic on December 31, 2007, complaining of shoulder pain subsequent to his arrest, and that the Plaintiff previously appeared to have recovered from his shoulder surgery. The records further show that the Plaintiff received an injection, underwent an MRI, received physical therapy, and visited his physician at the Clinic seven (7) times in relation to shoulder pain following his arrest. The Court is unable to hold as a matter of law that the Plaintiff's injury was merely *de minimis* under this set of circumstances.

The issues of whether force used by an officer is "clearly excessive" and "clearly unreasonable" are often intertwined. *Poole*, 691 F.3d at 628. In addressing these issues, however, the Court must separate out the specific conduct or force alleged to have resulted in a cognizable injury. The Supreme Court has provided that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. "[T]he right to

make an arrest . . . necessarily caries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.*; *see also Williams*, 180 F.3d at 703 ("In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation.")  In accordance with this jurisprudence, Plaintiff's contention that he was pushed around, thrown in the back seat of the police car, and had one hand unreasonably pulled behind his back are not constitutionally significant.  It does not appear that any injuries are claimed in connection with this alleged rough handling, and the Plaintiff failed to advise Captain Moore of his shoulder surgery until after he had been handcuffed and placed in the police car.  *Cf. Dunn v. Denk*, 79 F.3d 401, 403 (5th Cir. 1996) (providing that "[t]here can be no award for injury caused by reasonable force"; and, citing *Wells v. Bonner*, 45 F.3d 90 (5th Cir. 1995), in which the plaintiff's excessive force claim was rejected because the aggravation of his old shoulder injury resulted from officers "handcuffing his hands behind his back, a routine police procedure").

Accordingly, the Court will focus on Captain Moore's conduct in connection with Plaintiff's deposition testimony that he "told him [Captain Moore] I had surgery on it and he didn't pay it no attention."  (Breland Dep. [42-1] 73:24-74:11.)  "[A] police officer need not credit everything a suspect tells him."  *Rodriguez v. Farrell*, 294 F.3d 1276, 1278 (11th Cir. 2002) (citation omitted).  Statements by individuals claiming to have pre-existing injuries are, no doubt, uttered by many "who, if given the choice, would prefer not to be handcuffed at all and, if they must be restrained in that manner, would prefer that the handcuffs be in front."  *Id.*  In *Rodriguez*, the Eleventh Circuit reversed the district court's denial of qualified immunity to two police officers charged with excessive

force. 294 F.3d at 1277. The plaintiff before the Eleventh Circuit alleged that while he was being handcuffed, he told one of the officers to be careful because his arm was injured. *Id.* Yet, the plaintiff admitted that he neither requested to be handcuffed in front of his body nor asked that the handcuffs be removed altogether. *Id.* at 1279. There was also "no evidence of delay for delay's sake during the time Plaintiff was kept handcuffed." *Id.* Ultimately, the court held that Plaintiff's allegation did "not transform what is otherwise a meritless handcuffing-based excessive-force claim into a valid *continued* handcuffing-based excessive-force claim." *Id.* at 1278.

In this action, there is an absence of proof of any unreasonable delay or delay for delay's sake in the removal of Plaintiff's handcuffs.[13] Further, no evidence has been presented showing that the Plaintiff asked Captain Moore to be handcuffed in front, to loosen the handcuffs, to take off the handcuffs, or to do anything with the handcuffs in any manner. The Plaintiff also has not shown that he told Captain Moore he was in pain as a result of being handcuffed. The summary judgment evidence relevant to Plaintiff's excessive force claim shows only that he told Captain Moore something about a prior surgery on his shoulder while he was being transported to jail. The Court concludes that no reasonable jury would find Captain Moore's failure to remove, loosen, or adjust the Plaintiff's handcuffs based solely on this statement to constitute a "*clearly* excessive" or "*clearly* unreasonable" use of force. *Walcotte v. Wicks*, No. C-08-323, 2009 WL 1373601, at *1, 3, 5 (S.D. Tex. May 15, 2009) (granting the defendant police officer's

---

[13] Plaintiff provided the following testimony regarding when his handcuffs were removed: "Probably ten minutes after I was in jail. It wasn't that long after I went -- once I got inside. It wasn't long after that." (Breland Dep. [42-1] 77:20-24.)

motion for summary judgment when the plaintiff remained in handcuffs only for the amount of time necessary for the officer to investigate the scene and take the plaintiff to jail for processing, notwithstanding plaintiff's claim that he told the defendant his handcuffs were too tight and that he suffered from a wrist injury) (emphasis added).

Plaintiff's reliance on the Fifth Circuit's opinion in *Deville v. Marcantel*, 567 F.3d 156 (5th Cir. 2009), and his expert witness's unsworn report in opposition to summary judgment does not change this result. The unsworn report falls outside the scope of competent summary judgment-type evidence. *See Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment.") (citations omitted).  Moreover, the substance of the report does not create a fact issue.  Plaintiff's expert opines that "while *it is lawful to physically arrest a person for an ordinance violation, or any misdemeanor in the State of Mississippi*, generally, an ordinance violation such as this would be handled by issuing a citation to the alleged violator." (Doc. No. [46-5] at p. 3) (emphasis added).  A "lawful" physical arrest cannot be considered "objectively unreasonable"[14] even if it is more common for police officers to issue citations for ordinance violations.  The expert's speculation that Captain Moore's use of force against the Plaintiff "would be unreasonable and excessive" if Captain "Moore excessively twisted Mr. Breland's arm"[15] would not assist the trier of fact.  *See*

---

[14] *Hill*, 587 F.3d at 234.

[15] (Doc. No. [46-5] at p. 3.)

*Brown v. Park-Hannifin Corp.*, 919 F.2d 308, 312 (5th Cir. 1990) (affirming the trial judge's exclusion of speculative expert testimony).

The violent interaction between police and the plaintiff in *Deville v. Marcantel*, fails to match up with the facts underlying this dispute. There, officers broke the plaintiff's car window by striking it with a heavy flashlight resulting in multiple cuts to the plaintiff from broken glass; dragged the plaintiff out of her vehicle; threw her up against a car resulting in a blow to her abdomen; and applied handcuffs so tightly that she suffered long-term nerve damage resulting in four (4) surgeries. *See Deville*, 567 F.3d at 162, 168, 169. Here, the Plaintiff has testified that he was not struck, beaten, or slammed into a police car. (*See* Breland Dep. [42-1] 75:4-5, 77:12-19, 79:3-9.) Also, there is no allegation that Plaintiff's handcuffs were applied in such a manner as to cause injury necessitating any corrective surgery. *See Deville*, 567 F.3d at 168 (providing that the extent of the plaintiff's injuries may be relevant in determining whether force used was excessive).

Even assuming *arguendo* that the Plaintiff could establish a violation of the Fourth Amendment (the first prong of the qualified immunity analysis), there is no genuine issue of material fact as to whether Captain Moore's "conduct was objectively reasonable in light of clearly established law at the time"[16] of the challenged conduct (the second prong of the analysis). The right to be free from excessive force during an arrest was clearly established at the time of Plaintiff's arrest in December of 2007. *See Tarver*, 410 F.3d at 753-54. However, it is less than clear that refusing to release

---

[16] *Tarver*, 410 F.3d at 750.

someone from handcuffs solely because they advise of a prior shoulder surgery violates

that right. *Cf. Rodriguez*, 294 F.3d at 1278-79; *Walcotte*, 2009 WL 1373601, at *5.

"Excessive force incidents are highly fact-specific and without cases squarely on point,

officers receive the protection of qualified immunity." *Ontiveros v. City of Rosenberg,*

*Tex.*, 564 F.3d 379, 383 n.1 (5th Cir. 2009) (citing *Brosseau v. Haugen*, 543 U.S. 194,

198, 201, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)).

At best for the Plaintiff, his allegation falls within the "hazy border between

excessive and acceptable force", where qualified immunity operates to protect officers.

*Brosseau*, 543 U.S. at 198. Therefore, Plaintiff has failed to meet his burden of

negating Captain Moore's defense of qualified immunity and Captain Moore's request

for summary judgment will be granted.

### C.    State Law Claims

Defendants principally assert that Plaintiff's state law claims are time-barred.

The Court agrees. Count two of the Complaint accuses Captain Moore of committing a

tortious assault and battery on the Plaintiff. Count three of the Complaint alleges that

Captain Moore committed the tort of intentional infliction of emotional distress in

connection with his alleged assault of the Plaintiff. Plaintiff also contends that the

Sheriff's Department, the Board, and Sheriff McGee are jointly and severally liable to

the Plaintiff for the intentional infliction of emotional distress.

Plaintiff's claims are time-barred whether they are considered under the

Mississippi Tort Claims Act's ("MTCA") one-year statute of limitations, *see* Miss. Code

Ann. § 11-46-11, or the one-year statute of limitations prescribed by section 15-1-35 of

the Mississippi Code, in the event that Defendants' conduct is somehow considered to

fall outside the protection of the MTCA. Section 15-1-35 explicitly encompasses actions for "assault and battery", and the Mississippi Supreme Court has held that the tort of intentional infliction of emotional distress is fairly embodied within the causes of action listed under the statute. *Jones v. Fluor Daniel Servs. Corp.*, 32 So. 3d 417, 423 (¶ 26) (Miss. 2010). The alleged tortious activity giving rise to Plaintiff's state law claims occurred on December 16, 2007, when Captain Moore purportedly assaulted and battered the Plaintiff during his arrest, resulting in the aggravation of his shoulder injury. This suit, filed nearly three (3) years later on December 14, 2010, is clearly untimely under section 15-1-35.

The MTCA affords "the exclusive civil remedy against a governmental entity or its employee for acts or omissions which give rise to a suit." *Southern v. Miss. State Hosp.*, 853 So. 2d 1212, 1215 (¶ 10) (Miss. 2003) (citations omitted). Under the MTCA, suits against governmental entities must "be commenced within one (1) year next after the date of the tortious, wrongful or otherwise actionable conduct on which the liability phase of the action is based . . . ." Miss. Code Ann. § 11-46-11(3).[17] However, filing a notice of claim with a governmental entity allows for the statute of limitations to be tolled for a maximum period of 210 days. *See id.* Even giving the Plaintiff the full benefit of the MTCA's tolling provisions, this action was filed approximately one (1) year and five (5) months after the statute of limitations expired. As a result, there is no issue for trial with respect to Plaintiff's state law claims.

---

[17] Section 11-46-11 was amended effective July 1, 2012. *See* 2012 Miss. Laws, ch. 513 (S.B. 2845). The Court applies the prior version of the statute, which was in effect at the time this action was filed.

### III.  CONCLUSION

Based on the foregoing, summary judgment in favor of the Defendants is appropriate in this case.

IT IS THEREFORE ORDERED AND ADJUDGED that Defendants' Motion for Summary Judgment [42] is granted and Plaintiff's Complaint is dismissed with prejudice. A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED AND ADJUDGED that Defendants' Motion to Strike Plaintiff's Expert Witness [44] is denied as moot.

SO ORDERED AND ADJUDGED this the 15th day of April, 2013.


*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE